# UNITED STATES DISTRICT COURT

for the
Southern District of Ohio

FILED
RICHARD W. NAGEL
CLERK OF COURT
2/17/21

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
WEST. DIV. DAYTON

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched or identify the person by name and address)*<br>AN IPHONE WITH CRICKET SIM CARD 89011503277364943214, CURRENTLY LOCATED AT THE DEA DAYTON RESIDENT OFFICE | Case No. 3:21-mj-59<br>Kimberly Jolson |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A

located in the ___Southern___ District of ___Ohio___, there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☐ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC §§ 841 | Possession with the intent to distribute a controlled substance. |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*David M Ashley*
Applicant's signature

SA David Ashley
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ *(specify reliabl*

Date: February 17, 2021

*Kimberly A. Jolson*
United States Magistrate Judge

City and state: Columbus, Ohio

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF iPhone with a White Back and Red Phone Case with Cricket Sim Card 89011503277364943214 CURRENTLY LOCATED AT 3821 Colonel Glenn Hwy, Beavercreek, Ohio 45324 | Case No. 3:21-mj-59 _____ |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, David M. Ashley (hereinafter referred to as the Affiant), being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. Your Affiant is an "Investigative or Law Enforcement Officer" of the United States Drug Enforcement Administration within the meaning of Title 21, United States Code, Section 878. That is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 21, United States Code, Section 878. Affiant has been employed by the DEA since August 2009, and is currently assigned to the Dayton Resident Office. Affiant has conducted and participated in complex drug trafficking conspiracy and money laundering investigations which have resulted in arrests;

execution of search warrants that resulted in the seizure of narcotics, narcotics proceeds and other evidence of narcotics trafficking activities; and supervised the activities of cooperating sources (CS) that have provided information and assistance resulting in narcotics purchases. Through training and experience, affiant is familiar with the manner in which persons involved in the illicit distribution of controlled substances often operate. These people usually attempt to conceal their identities, as well as the locations at which they reside, and where they store controlled substances and the illegal proceeds derived there from. Through training and experience, affiant is familiar with the practices of narcotics distributors, whereby they attempt to conceal the true nature, source and location of proceeds of illegal activity, commonly referred to as money laundering. Affiant has participated in several Title-III wire tap investigations and is familiar with how local drug traffickers and high level traffickers conduct transactions.

3. Affiant is participating in an investigation conducted by agents of the DEA and other agencies, into the methamphetamine activities of individuals in the Dayton, Ohio area and elsewhere. Methamphetamine is a schedule II controlled substances. I am familiar with the facts and circumstances described herein and make this affidavit based upon personal knowledge derived from my participation in this investigation, conclusions I have reached based on my training and experience, and upon information I believe to be reliable from the following sources:

    A. Physical surveillance conducted by federal and local law enforcement agents, the details of which have been reported to me either directly or indirectly;
    B. Information developed from cooperating sources and/or defendant witnesses;
    C. Public records,

4.     This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

**IDENTIFICATION OF THE DEVICE TO BE EXAMINED**

5.     The property to be searched is a iPhone with a White Back and Red Phone Case with Cricket Sim Card 89011503277364943214, hereinafter the "Device." The Device is currently located at 3821 Colonel Glenn Hwy, Beavercreek, Ohio 45342.

6.     The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

**PROBABLE CAUSE**

7.     On December 10, 2020, Affiant and SA Lauren Wagner responded to the scene at 2829 Mall Park Dr., Miamisburg, Ohio at the request of Miamisburg Police Department Sgt Jeff Muncy. SA Ashley spoke with Miamisburg Police Officer Daniel Sampson in regards to the traffic stop. PO Sampson stated that he was in the area of Ohio SR-725 and SR-741 and noticed a Toyota Camry, with Kentucky license plate ADM7028, that had conducted an improper lane change and crossing yellow line traffic violation. The Toyota Camry was pulled over at 2829 Mall Park Dr., Miamisburg, Ohio. PO Sampson stated that he approached the car and the driver of the vehicle stated that he was enroute to an Extended Stay in Miamisburg, Ohio to visit his dad, later identified as Billy Joe RUSSELL. WILLIAMS was asked to provide a valid driver's license and rental agreement in which he was not able to do so. PO Sampson ran WILLIAMS' information in a law enforcement database which revealed he had an active arrest warrant with Greene County Ohio. Also, during the course of the traffic stop, PO Sampson learned

3

WILLIAMS was also a target of a narcotics investigation in Xenia, Ohio. WILLIAMS fled from law enforcement on a motorcycle with a backpack. During the pursuit, WILLIAMS crashed the motorcycle. Law enforcement recovered WILLIAMS' backpack which revealed approximately 314 grams of meth, 6.4 grams of fentanyl, and $5,401 United States Currency.  PO Sampson learned WILLIAMS also had a lengthy criminal record for drug trafficking, domestic violence, assault, possession of drugs, aggravated possession of drugs, and drug paraphernalia. WILLIAMS was removed from the vehicle, an iPhone with a white back and red phone case with Cricket sim card 89011503277364943214 was retrieved from his possession, and placed in a Miamisburg Marked Unit pending a field interview by Affiant and SA Lauren Wagner.

8. PO Sampson then returned to the vehicle and spoke with the passenger. The passenger of the vehicle was Robert CRAWLEY. CRAWLEY was not able to produce a valid ID. PO Sampson, while speaking with CRAWLEY, noticed an odor of marijuana coming from the vehicle.  The officer asked CRAWLEY to exit the vehicle.  When CRAWLEY did so, the officer saw a glass tube consistent with a bong in plain view in the pocket of the passenger door. CRAWLEY was placed in custody in a marked unit pending interview by Affiant and SA Lauren Wagner. PO Sampson, Affiant, and SA Lauren Wagner learned that Warren County Drug Task force had and open investigation and pending methamphetamine charges for CRAWLEY.  The vehicle was going to be towed and an inventory search was conducted. The search of the vehicle revealed another baggie of suspect methamphetamine in the center console, four marijuana edible packages were found in the center console (retained by Miamisburg Police Department), three more edible packages were recovered from inside a backpack, located in the rear seat (retained by Miamisburg Police Department), and another edible package recovered from within the dash pocket (retained by Miamisburg Police Department). In the front right passenger door

4

pocket was a bong and Narcan. Further discovered was a motorcycle intercom box with large bags of a crystalline substance. A search of the backpack also revealed a small baggie of multicolored pills which were suspected pressed methamphetamine. A field test was conducted of these exhibits which tested positive for methamphetamine. Also in the backpack were several charge card style cards which had Brandon WILLIAMS' name on them and ziplock baggies with residue.

9. Sgt Muncy noticed that a man, who identified himself as the father of Brandon WILLIAMS, had walked to the scene. He stated that he was staying at the Extended Stay in room 216. The male was identified as Billy Joe RUSSELL. RUSSELL stated that WILLIAMS had taken the car when he had fallen asleep and did not have permission to use the vehicle. RUSSELL stated that the narcotics found in the car were not his. RUSSELL has a prior criminal history of domestic violence. RUSSELL then left the scene via foot. Affiant later learned that RUSSELL had been identified by a confidential source to a non-DEA law enforcement agency as an individual that had at some time sold narcotics to that confidential source.

10. Affiant obtained personal identification from WILLIAMS. WILLIAMS stated that he wanted to cut straight to the point wherein WILLIAMS admitted to being a drug dealer and would be willing to cooperate with law enforcement for consideration. WILLIAMS stated he didn't want to go to jail. This statement was made spontaneously by WILLIAMS while Affiant was collecting personal identifying information. Affiant, as witnessed by PO Sampson and SA Lauren Wagner, read Brandon WILLIAMS his Miranda Warnings via DEA Form 13. This was captured on police car video. The following is a summary of what was captured on police car video. WILLIAMS stated that the narcotics did not belong to him and it belonged to Rob CRAWLEY. WILLIAMS stated that he was willing to work with the DEA for consideration of

reduction of sentencing of charges for CRAWLEY. WILLIAMS stated he has Kentucky sources and that he has Cartel connections in Dayton. WILLIAMS also stated that he can get hold of "boy" and "fetty". WILLIAMS stated that he can get 20-30 pounds of methamphetamine for $5,500 a pound and 5-10 pounds of fetty for an unknown price. WILLIAMS stated that he had no current medical conditions, such as Covid, but had sustained an ankle injury due to a vehicle accident.

11. At that time, interviews were concluded. WILLIAMS was transferred to Xenia Police Department for the outstanding warrant. PO Sampson transported the evidence to the Miamisburg Police Department for processing.

12. Based on training and experience, your Affiant knows that drug traffickers frequently use wireless/cellular phones to carry out their activities. It is often common for drug traffickers to have multiple phones because certain phones may be used only for certain purposes. For instance, a trafficker may use one phone just to speak to his supplier, while using a different phone to speak only to his customers. This is a counter-surveillance technique intended to make it harder for law enforcement to identify the user of the phones and his associates. Traffickers also commonly use prepaid cellular phones to hide their identity as the user because they generate no billing information, often require little to no identifying information to activate, can sometimes be activated using an alias, and can be easily disposed of should the trafficker believe that law enforcement has identified the phone number. In this case, WILLIAMS was in possession of the Target Device while also in a vehicle with a large amount of narcotics.

13. Your Affiant knows that traffickers commonly text message each other or their customers, such as meeting locations, prices, and other information needed to carry out the sale

of drugs (sometimes in code) and do so using cellular telephones, smartphones, and smart devices, such as tablets.  They commonly store phone numbers for their associates and customers in electronic phone book/contact lists, often under alias or code names.  Your Affiant knows that traffickers, using digital cameras located on their cellular phone or other electronic devices, will sometimes use these devices to take photographs or videos of themselves, their location, their product, their firearms or their associates, which can be electronically stored on, and transmitted from, these electronic devices.  Information can also be downloaded from the internet onto the cellular phone or smart devices, such as email, social network information (like "Facebook"), travel information like maps or directions, or photographs.  Call data, such as missed calls, received calls, or dialed calls are often electronically stored in the cellular phone.  The information electronically stored on a phone can also be evidence of who possessed or used a cellular phone at a given time, can contain direct evidence of drug trafficking acts, and can help identify drug trafficking locations or associates through GPS data.  Affiant is aware that there are tools to extract electronic data from a cellular phone so that law enforcement can review it for items of evidentiary value.  I also know that drug dealers use applications on Smart Phones or Devices such as an iPad to communicate in the manner described above with customers, suppliers and associates.  In this case, WILLIAMS indicated that he had the ability to contact narcotics sources in both Ohio and Kentucky.

14. I also know that drug traffickers often threaten violence or use of force against their rivals as well as customers who, for instance, may owe them money.  In doing so, drug traffickers often use electronic devices such as cellular telephones, smartphones, tablets, and the like, to send communications referencing violence, use or possession of firearms, or threats.

7

15. In this modern era, individuals also use smart telephones and smart devices to log on to online banking platforms. I know that drug traffickers often use banking services to transmit money to their domestic and international suppliers.

16. Based on my knowledge, training, and experience, your Affiant knows that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensic tools.

17. The Device is currently in the lawful possession of the Drug Enforcement Administration. It came into the Drug Enforcement Administration's possession by transfer from the Miamisburg Police Department. Therefore, while the Drug Enforcement Administration might already have all necessary authority to examine the Device, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws.

18. The Device is currently in storage at 3821 Colonel Glenn Highway, Beavercreek, Ohio 45342. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the Drug Enforcement Administration.

## TECHNICAL TERMS

19. Based on my training and experience, I use the following technical terms to convey the following meanings:

a. Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.

  This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected

to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

20. Based on my training, experience, and research, and from consulting the manufacturer's advertisements, I know that the Device has capabilities that allow it to serve as "a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA." In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

21. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

22. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d.    The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e.    Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

23.    *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

24.    *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

25. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

*David M Ashley*

David Ashley
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me
on ~~February 16, 2021~~:
February 17, 2021

Kimberly A. Jolson
United States Magistrate Judge

14

## ATTACHMENT A

The property to be searched is an iPhone with a White Back and Red Phone Case with Cricket Sim Card 89011503277364943214, hereinafter the "Device." The Device is currently located at 3821 Colonel Glenn Highway, Beavercreek, Ohio 45324.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1. All records on the Device described in Attachment A that relate to violations of 21 § U.S.C. 841 and involve Brandon WILLIAMS since November 10, 2020, including:

   a. lists of customers and related identifying information;

   b. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   c. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   d. and information identifying other individuals who participate in the sale, distribution, or acquisition of drugs with WILLIAMS

   e. any information recording WILLIAMS' schedule or travel from November 10, 2020 to the present;

   f. all bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored,

including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.